Dear Chief O'Malley:
In recent correspondence to this office you advise that you are the elected chief of police of Montpelier, Louisiana, which municipality is governed by the provisions of the Lawrason Act, R.S. 33:321, et seq. Your questions are prompted by a continuing dispute between yourself as chief of police and the mayor and board of alderman regarding the authority of your office. Because this office has addressed many times several of your thirteen questions, requoted below, we will direct your attention to attached opinions of this office for a full recital of pertinent law, without restating the law herein.
 1. If an appointed Chief of Police is receiving a certain salary, does the Council have the right to reduce this salary when he becomes elected because they failed to vote on it?
You have always held the elected office of chief of police, despite the fact that you originally retained the office via appointment to fill a vacancy. Because the office is an elected position, R.S. 33:404.1
dictates that "the board of aldermen shall not reduce the compensation of any elected official during the term for which he is elected." The prohibition against the reduction in compensation protects those who occupy this elected office. See Attorney General Opinion 98-483. The appointment of an individual to fill the position on an interim basis does not change the protection and benefits afforded one who occupies this elected position. The board of aldermen may by ordinance reduce the compensation of the newly elected chief of police, if such action is taken prior to the beginning of the new term. By failing to continue to pay you your original salary of $405.00 per month, the board also stands in violation of constitutional authority, specifically, LSA Const. Article VI, Section 12 (1974) providing:
 Section 12. The compensation or method of fixing the compensation of an elected official of any local governmental subdivision which operates under a home rule charter or plan of government, as provided in Sections 4 and 5 of this Article, shall be provided in its charter. The compensation or method of fixing the compensation of an elected official of any other local governmental subdivision shall be provided by law. Compensation of a local official shall not be reduced during the term for which he is elected. (Emphasis added).
 2. Can the Council require the Chief of Police to wait the required time plus the extra month's before paying the amount stipulated in the minutes?
The back salary owed you is due and payable now, without further delay by the board.
 3. Does the Elected Chief of Police have the authority to ask the Sheriff's office to cover the community when he is not available?
The mutual aid statute, referenced in your letter, permits the chief of police of a municipality or the sheriff to request the manpower and equipment of another law enforcement agencies in two limited situations, specifically, either (1) an emergency or (2) a special event. R.S. 33:2337
provides:
 A. (1) In the event of an emergency or a special event and upon the request of another police department or sheriff's office, by the chief of police, the sheriff, or their designees of that department on duty at the time of the emergency or special event, a political subdivision may furnish police manpower and equipment if the chief of police, the sheriff, or their designees on duty, of the police department or sheriff's office receiving the request for aid is of the opinion that such police manpower and equipment are available.
 (2) If the responding agency agrees to provide mutual aid, the personnel of the responding agency shall report to and shall work under the direction and supervision of the senior officer of the requesting agency on duty at the time that the request for aid is made. During the emergency or special event the personnel of the responding agency shall have the same law enforcement authority as the personnel of the requesting agency. Police manpower and equipment may be recalled at the sole discretion of the highest ranking officer on duty of the police department furnishing police manpower and equipment. During the emergency, the responding agency shall be considered the agent of the requesting agency.
 (3)(a) "Emergency" means an actual or potential condition that poses an immediate threat to life or property and exceeds the capability of the requesting agency to counteract successfully.
 (b) "Special event" means an actual or potential situation that poses or may pose a threat to life or property because of the number of people involved and exceeds the capability of the requesting agency to counteract successfully.
 B. In situations where mutual aid is utilized, radio communications shall be established, if possible, through the radio systems patch, or one of the officers shall maintain personal eye-to-eye contact with an officer of the other agency and pass information between agencies.
 C. The provision of mutual aid shall not give rise to liability or responsibility for failure to respond to a request for assistance.
 D. No charge shall be made to a political subdivision for services rendered by any other political subdivision.
However, the arrangement is considered temporary. R.S. 33:2335
specifically provides "nothing herein shall allow permanent agreements between agencies."
Note also that R.S. 33:1234 permits a municipality and a sheriff to execute an intergovernmental agreement for the sheriff to perform law enforcement services within the municipality. R.S. 33:1234 pertinently states:
 Any parish, or municipality of political subdivision of the state, or any combination thereof, may make arrangements between or among themselves to engage jointly in the construction, acquisition or improvement of any public project, the promotion and maintenance of any undertaking or the exercise of any power, provided that at least one of the participants to the agreement is authorized under a provision of general or special law to perform such activity or exercise such power as may e necessary for completion of the undertaking. Such arrangements may provide for the joint use of funds, facilities, personnel or property or any combination thereof necessary to accomplish the purposes of the agreement, and such agreements may include but are not limited to activities concerning:
(1) Police, fire and health protection.
If the contract involves the expenditure of municipal funds, both the mayor and the board of aldermen would have to approve the contract. The mayor would sign the contract on behalf of the municipality. See Attorney General Opinion 93-283.
Further, whether or not a contract is perfected, note that the sheriff may exercise concurrent jurisdiction with the chief of police within municipal limits. Where a complaint of an offense occurring within a municipality is made with the sheriff's office, the sheriff may handle the complaint or refer it to the city police. See Attorney General Opinions 93-6 and 97-484. The chief of police nonetheless remains the chief law enforcement official within the municipality. His duties remain defined by R.S. 33:423:
 The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance . . .
 4. Can the Mayor and Board of Aldermen require the Sheriff's Office to maintain insurance on the Chief of Police or any police officer when doing mutual aid?
No. R.S. 33:2337(D) provides "no charge shall be made to a political subdivision for services rendered by any other political subdivision" in instances of mutual aid.
 5. Can the Mayor and Board of Aldermen require the Chief of Police to disclose the nature of or the place where he went when doing mutual aid?
R.S. 33:423, quoted above, provides that the chief of police "shall perform all other duties required of him by ordinance." If the board of aldermen enacts an ordinance requiring you to disclose your work schedule, then you would be required to do so. See Attorney General Opinion 81-251. Such a work schedule would then be considered public record. However, investigative records and reports used by the chief of police for criminal investigations would remain exempt from disclosure pursuant to R.S. 44:3.[1]
 6. Can the mayor and Board of Aldermen of a Lawrason Act community with an elected Chief of Police fix a charge for mileage on mutual aid calls?
No. See our response to question four, above.
 7. Since an elected or even an appointed Chief of Police is on duty for 24 hours a day, 7 days a week, can the Mayor and Board of Aldermen require him to park his unit and use his personal car to go somewhere?
Concerning the use of a police vehicle, this office has opined:
 Thus, it is our opinion that the chief of police has inherent authority to control city police vehicles. He has the authority to assign a police department vehicle to himself for police work but such police vehicle may not be used as a personal car by the chief of police unless this personal use has been authorized by the mayor and board of aldermen. However, because of their power to control and manage municipal property, it is also our opinion that the mayor and board of aldermen may specifically request that the village car be used by the chief of police only when he is working or conducting business relative to the municipal police department. See Attorney General Opinion 82-1106.
The vehicle may be kept at the chief's residence at night where he is on call twenty-four hours a day. See Attorney General Opinions 79-954 and 76-40; see also Attorney General Opinion 99-190, authorizing police department employees to travel to and from work in an assigned police vehicle while on call.
 8. If the Chief of Police does not feel comfortable with appointing anyone to act or to be hired as a policeman does he have the right not to recommend anyone to fill the position?
No. R.S. 33:423 pertinently provides:
 In those municipalities governed by the provisions of this Part, R.S. 33:321 et seq., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotions of officers, to effect disciplinary action, and for dismissal of police personnel. Such nominations or recommendations are to be made regardless of race, color, disability, as defined in R.S. 51:2232(11), or creed. (Emphasis added).
Use of the word "shall' is mandatory. See attorney General Opinion 01-07 for a thorough discussion of this issue.
 9. Should the Chief of Police be required to ask for permission to have the police vehicle serviced or the tires replaced when needed?
In response to this question, note that this office has previously determined:
 Even though police vehicles are municipal property, the chief of police has the inherent authority to control municipal police vehicles, including their repair and maintenance. However, because of the mayor's and the board of aldermen's statutory power to control and manage municipal property, they must legally designate and issue vouchers for the repair of the police vehicles.
See Attorney General Opinions 99-406 and 84-190.
Note further that "absent the failure of the chief to comply with formal municipal purchasing procedures in making the "purchase," the refusal to pay an expenditure validly incurred by the chief constitutes and infringement upon the chief's inherent powers". See Attorney General Opinion 84-190.
 10. When a village as small as Montpelier only has one police unit and no other policemen other than the chief of police, does the Mayor have the right to remove the police unit out of the Chief's yard when the Chief is not at the residence?
No. See our response to question seven, above.
 11. Does the Mayor have the right to call the Sheriff's office and request the name of the person requesting mutual aid from the Chief of Police?
He may request and obtain this information from the chief of police. R.S. 33:404 provides, in part:
 The mayor shall reside at all meetings of the board of aldermen, and in case there is an equal division, he shall give the deciding vote . . . He may require any officer of the municipality to exhibit his accounts or other papers, and to make a report to the board of aldermen, in writing, on any matter pertaining to his office . . .
Thus, the mayor may require a chief of police, as an officer of the municipality, to make a written report to the board of aldermen concerning any matter pertaining to his office, including the circumstances surrounding your participation in a mutual aid program. Such a report would include information about the use of a police vehicle and any bills incurred by the police department via mutual aid participation.
 12. Does the Mayor have the right to call the Sheriff's Office and tell them not to request mutual aid from the Chief of Police?
No. The authority to determine participation in a mutual aid program is by statute conferred solely upon the chief of police or sheriff as circumstances dictate. See R.S. 33:2337, quoted above.
 13. If an elected Chief of Police of a Lawrason Act community has no recourse but to hire a lawyer can the Chief of Police require the governing board to reimburse him for the cost of doing so?
This office has determined that municipal funds may be utilized to reimburse attorney's fees and expenses for those proceedings filed by municipal officials in their official capacities and for the benefit of the municipality. See Attorney General Opinion 02-0005. However, the municipal governing authority would be charged with the responsibility of making the necessary factual determinations regarding whether the action was in fact brought to benefit the municipality. Further, the governing authority would have to determine that (1) the hourly rate charged by legal counsel was reasonable, (2) the number of hours spent by legal counsel was reasonable and necessary, and (3) any costs incurred by legal counsel were reasonable and necessary. See Attorney General Opinions 01-94, 97-428, 95-492, 95-242 and 94-384.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
Date Released: April 16, 2002
[1] § 3. Records of prosecutive, investigative, and law enforcement agencies, and communications districts
A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, investigators, public health investigators, correctional agencies, communications districts, or intelligence agencies of the state, which records are:
(1) Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled, except as otherwise provided in Subsection F of this Section; or
(2) Records containing the identity of a confidential source of information or records which would tend to reveal the identity of a confidential source of information; or
(3) Records containing security procedures, investigative training information or aids, investigative techniques, investigative technical equipment or instructions on the use thereof, or internal security information; or
(4)(a) The records of the arrest of a person, other than the report of the officer or officers investigating a complaint, until a final judgment of conviction or the acceptance of a plea of guilty by a court of competent jurisdiction. However, the initial report of the officer or officers investigating a complaint, but not to apply to any follow-up or subsequent report or investigation, records of the booking of a person as provided in Louisiana Code of Criminal Procedure Article 228, records of the issuance of a summons or citation, and records of the filing of a bill of information shall be a public record.
(b) The initial report shall set forth:
(i) A narrative description of the alleged offense, including appropriate details thereof as determined by the law enforcement agency.
(ii) The name and identification of each person charged with or arrested for the alleged offense.
(iii) The time and date of the alleged offense.
(iv) The location of the alleged offense.
(v) The property involved.
(vi) The vehicles involved.
(vii) The names of investigating officers.
(c) Nothing herein shall be construed to require the disclosure of information which would reveal undercover or intelligence operations.
(d) Nothing herein shall be construed to require the disclosure of information which would reveal the identity of the victim of a sexual offense.
(5) Records containing the identity of an undercover police officer or records which would tend to reveal the identity of an undercover police officer; or
(6) Records concerning status offenders as defined in the Code of Juvenile Procedure.
(7) Repealed by Acts 1990, No. 59, § 3, eff. June 26, 1990.
B. All records, files, documents, and communications, and information contained therein, pertaining to or tending to impart the identity of any confidential source of information of any of the state officers, agencies, or departments mentioned in Paragraph A above, shall be privileged, and no court shall order the disclosure of same except on grounds of due process or constitutional law. No officer or employee of any of the officers, agencies, or departments mentioned in Paragraph A above shall disclose said privileged information or produce said privileged records, files, documents, or communications, except on a court order as provided above or with the written consent of the chief officer of the agency or department where he is employed or in which he holds office, and to this end said officer or employee shall be immune from contempt of court and from any and all other criminal penalties for compliance with this paragraph.
C. Whenever the same is necessary, judicial determination pertaining to compliance with this section or with constitutional law shall be made after a contradictory hearing as provided by law. An appeal by the state or an officer, agency, or department thereof shall be suspensive.
D. Nothing in this Section shall be construed to prevent any and all prosecutive, investigative, and law enforcement agencies and communications districts from having among themselves a free flow of information for the purpose of achieving coordinated and effective criminal justice.
E. Nothing in this Section shall be construed as forbidding the release of all or part of investigative files of fires classified as arson, incendiary, or suspicious unless, after consultation with the appropriate law enforcement agency, any sheriff, district attorney, or other law enforcement agency directs that the records not be disclosed because of pending or anticipated criminal adjudication.
F. Notwithstanding any other provision of law to the contrary, after a period of ten years has lapsed from the date of death of a person by other than natural causes, and upon approval by the district court having jurisdiction over any criminal prosecution which may result due to the death of such person, any prosecutive, investigative, and other law enforcement agency, or any other governmental agency in possession of investigative files or evidence or potential evidence, or any other record, document, or item relating to said death shall, upon request, provide copies of all such files, records, and documents to immediate family members of the victim and shall provide unlimited access for any and all purposes to all such evidence, potential evidence, and other items to any member of the immediate family and to any person or persons whom any member of the immediate family has designated for such purposes. The access granted shall include but not be limited to the examination, inspection, photographing, copying, testing, making impressions, and the use in any court proceeding of and conducting forensic studies on such evidence, potential evidence, and other items. For the purposes of this Subsection, the term "immediate family" shall mean the surviving spouse, children, grandchildren, and siblings of the victim.